IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **WIRELESS WORLD, L.L.C.,** | : | |
| | : | **Civil Action No. 02-0061 (STT)** |
| **Petitioner,** | : | |
| | : | |
| v. | : | |
| | : | |
| **VIRGIN ISLANDS PUBLIC SERVICES** | : | **OPINION REVIEWING THE VIRGIN** |
| **COMMISSION,** | : | **ISLANDS PUBLIC SERVICES** |
| | : | **COMMISSION'S RESPONSE TO** |
| **Respondent,** | : | **THIS COURT'S JULY 15, 2005 ORDER** |
| | : | |
| **INNOVATIVE TELEPHONE,** | : | |
| | : | |
| **Intervenor.** | : | |

**APPEARANCES:**

J. Daryl Dodson, Esq.
Moore Dodson & Russell, P.C.
No. 14A Norre Gade, Suite 1
PO Box 310
St. Thomas, U.S.V.I.  00804
       Attorney for Petitioner, Wireless World LLC

Tanisha Bailey-Roka
Dolace McLean, Esq.
Department of Justice
34-38 Kronprindsens Gade
GERS Building, 2nd Floor
St. Thomas, U.S.V.I.  00802

       Attorney for Respondent, Virgin Islands Public Service Commission

J'Ada Finch-Sheen, Esq.
Innovative Telephone
4006 Estate Diamond
PO Box 7610
St. Thomas, U.S.V.I.  00802
       Attorney for Intervenor, Innovative Telephone

Gregory J. Vogt, Esq.
2121 Eisenhower Avenue
Suite 200
Alexandria, VA 22314

Of Counsel to Intervenor, Innovative Telephone

**BROTMAN, DISTRICT JUDGE (Sitting by Designation)**

The within matter initially comes before the Court upon petition of Wireless World, L.L.C., now known as Choice Communications, L.L.C.[1] (hereinafter referred to as "Choice"), seeking review of the two decisions issued by the Virgin Islands Public Service Commission (hereinafter referred to as "PSC").  Argument before the Court was held on September 15, 2004 with the Court entering an Opinion and Order dated July 15, 2005.[2]  To maintain continuity, the Court in Exhibit 1 attaches a copy of the Opinion and Order below and will then proceed to a determination on the Remand directed in the Court's Order of July 15, 2005.

I.     **BACKGROUND**

Innovative Telephone (hereinafter referred to as "Innovative") operates a phone network in the United States Virgin Islands.  This dispute began in August 2000 when Choice sought access to Innovative's network in accordance with the provisions of the Telecommunications Act of 1996 (hereinafter referred to as the "Act").  The parties failed to reach a mutually acceptable interconnection agreement.  Consequently, Choice involved the Virgin Islands Public Services Commission (the "PSC"), urging the PSC to find that: (1) Innovative failed to negotiate in good faith, and (2) Innovative was no longer entitled to the rural exemption afforded it under 47 U.S.C. § 251(c) of the Act.  Choice also asked the PSC to arbitrate the issues remaining in the interconnection agreement which the parties had not been able to agree upon.

_____

[1]Wireless World, L.L.C. changed its name to "Choice Communications, L.L.C." in July 2002.  For consistency the Court will refer to the party as "Choice" throughout the entire Opinion.

[2]The Court notes that the July 15, 2005 Order, in its text, incorrectly lists the Order date as July 14, 2005.

1

Responding to Choice's requests for interconnection, the PSC appointed a hearing examiner by Order dated January 4, 2001 and directed him to issue a report and recommendation on how to resolve Choice's petition.  Following this directive, the Hearing Examiner issued two Reports: the first on May 22, 2001 and the second on August 31, 2001 (the "May Report"and "August Report," respectively).

The May Report advised the PSC to refuse to lift Innovative's rural exemption.  It concluded that removal of the exemption would be inconsistent with universal service goals. (PSC Docket No. 526, Hrg. Exam. Rpt. May 22, 2001 at 30-37.)  The second report arbitrated the remaining issues on an interconnection agreement between the parties.  (PSC Docket No. 526, Hrg. Exam. Rpt. Aug. 31, 2001 at 48-51.)  The PSC adopted both reports in their entirety and approved an arbitrated interconnection agreement that incorporated the Hearing Examiner's conclusions.  (PSC Docket No. 526, May 22, 2001 & Sept. 7, 2001) ("May Order" and "September Order.")

This matter came before the Court upon the petition of Choice, seeking review of the two decisions issued by the PSC.[3]  This Court's review of the two PSC decisions, as set forth in the July 15, 2005 Opinion and in this Opinion, encompasses both of the Hearing Examiner's Reports, the PSC's two orders, the briefs submitted by all the parties, the PSC's response to this Court's remand Order of July 15, 2005 entitled "Virgin Islands Public Service Commission Docket No. 526 (Remand) Commission Filing" (hereinafter referred to as "Commission Filing"), and the oral arguments held on September 15, 2004 and October 26, 2007.

Specifically, at issue in this Opinion is the PSC's response to the Court's July 15, 2005

_____

[3]Each decision corresponds with one of the Hearing Examiner's Reports.

Order in which the Court remanded this matter to the PSC for clarification on the following issues:

(1) How Choice's interconnection request is either consistent or not consistent with 47 U.S.C. § 254; and

(2) The significance of the rate rebalancing analysis in the determination that Choice's request threatened universal service; and

(3) Whether Innovative should keep its rural exemption, consistent with the Court's Opinion dated July 15, 2005.

## II.   ANALYSIS OF THE VIRGIN ISLANDS PUBLIC SERVICE COMMISSION'S RESPONSE TO THIS COURT'S JULY 15, 2005 ORDER

### A.   Introduction

On remand, the PSC considered briefs filed on remand by both Choice and Innovative. On December 6, 2006, the PSC met in a special session to hear argument from the parties.  At the conclusion of the session, PSC voted to adopt the previously drafted Commission Filing as its response to this Court.

The substance of the Commission Filing will be discussed further in this Opinion; however, the Court should note at this point a clarification to its previous Order that has been brought to the Court's attention.  In Section V, Paragraph A of its July 15, 2005 Opinion, the Court stated that Innovative had been ordered to provide price and volume discounts to Choice. The PSC points out that while strong recommendation was made for allowing price and volume discounts, they were not ordered by the PSC or its Hearing Commissioner.[4]  As such, the PSC

---

[4]See "Notice of Compliance of Defendant Virgin Islands Public Services Commission with Order of May 19, 2005," issued by the PSC on December 8, 2006.

did not discuss the issue of price and volume discounts in its Commission Filing.

**B.      Commission Filing**

On December 8, 2006, the PSC submitted its response to the request made by this Court in its July 15, 2005 Order.  Within that response was the Commission Filing, approved at the special hearing held on December 6, 2006.  The main issue to be determined on remand was whether Choice's petition for the highest level of interconnection under the Act, pursuant to § 251(c),[5] complied with prong three of the test set forth § 251(f)(1)(A)[6] regarding universal service.  In its Commission Filing, the PSC further affirms its own original ruling that Choice's attempts at interconnection are inconsistent with the goals of universal service.

*1.      Consistency with Universal Service*

The PSC believes that Choice does not offer the necessary level of commitment to serving the needs of the market due to the fact that Choice intended to have limited market participation.  To the PSC, the role that Choice intends to play in the Virgin Islands market is substantially less than the role intended by § 254.  Since Choice has not expressed commitment to engage in full participation in the Virgin Islands markets, the PSC finds that the limited

---

[5]There are three levels of interconnectedness afforded by 47 U.S.C. § 251.  The first two levels set forth in that statute deal with the general duties of telecommunications carriers and obligations of all local exchange carriers.  47 U.S.C. § 251 (a),(b). Section (c) sets out additional obligations of incumbent local exchange carriers. It is from that section that certain carriers may enjoy the rural exemption allowed by 47 U.S.C. § 251(f)(1)(A).

[6]The three prong test states that Subsection (c) of § 251 shall not apply to a rural telephone company unless the State commission determines that the request is "not unduly economically burdensome, is technically feasible, and is consistent with § 254...".  47 U.S.C. § 251(f)(1)(A).  It was previously determined by the PSC and upheld by this court that Choice's request is compliant with the first two prongs of the test.

participation by Choice would deny the residents any benefit normally afforded by market liberalization. Thus, the PSC concluded that removing Innovative's rural exemption and allowing Choice the level of interconnectedness that it desires would not be in keeping with the principles of universal service.

The PSC additionally states that Choice's participation in the Virgin Islands market would present a tangible threat to its own ability to further the goals of universal service since Choice did not show willingness to recognize certain authorities held by the PSC.[7] If the PSC does not have the ability to enforce its rules and regulations over this potential participant in the Virgin Islands telecommunications market, the preservation of universal service would be in jeopardy.

2.    *Rate Rebalancing*

In its July 15, 2005 Order, this Court also requested that the PSC discuss the significance that the rate rebalancing analysis had in its decision that Choice's request for interconnection challenges universal service. The PSC states firmly that its decision to reject the Choice application is not based on a primary concern for rate rebalancing. PSC assures that its concerns over rate rebalancing are not only limited, but also are secondary to its concerns for adherence to the principles of universal service. The PSC envisions that if Innovative's rural exemption was removed a rate rebalancing is the inevitable outcome of implementation of the plans presented by Choice.

Though the ultimate effects of such a rate rebalancing are clearly at this time

---

[7]In the Commission Filing, the PSC stated that Choice's testimony in this proceeding showed no willingness to recognize the authority of the PSC to levy assessments, impose obligations, and compel compliance with PSC's Orders on its business interests.

indeterminable, the PSC expects that the change required by Choice's proposal would be beyond the ability of the marketplace to absorb.

       *3.*      *Conclusion of the Commission Filing Regarding Whether Innovative Should Keep Its Rural Exemption*

The PSC, while admitting that rate rebalancing is an accepted outcome of competition, asserts that it would not serve the general public to implement Choice's proposal. The PSC's main concerns lie in the fact that it appears that it lacks jurisdiction and enforcement powers over Choice. The agency is concerned that given Choice's unwillingness to defer to it, it will lose its ability to ensure the continued maintenance and support of universal service. Given the level of interconnectedness being requested by Choice, coupled with the fact that Choice is not willing to submit to the jurisdiction of the PSC, the PSC firmly assesses that Choice's goals are inconsistent with the goals of universal service.

## C.      ANALYSIS OF THE PSC'S FINDINGS

With its July 15, 2005 Order, this Court requested that the PSC justify and support its contention that the third prong of the test had not been met and thus Innovative's rural exemption should be upheld. The PSC was asked to demonstrate that it based its findings on the notion that the goals of universal service will not be sustained should Choice's request to remove Innovative's rural exemption be granted. The burden of proof is with Choice,[8] yet Choice did not offer argument sufficient to allow the PSC to deem that its requests are consistent with the

-------------------------------------------------

[8]In its Commission Filing, the PSC stated that throughout this matter, it has been the responsibility of Choice to show that a decision to remove Innovative's rural exemption would comply with the three prong test of § 251(f)(1)(A) and thus would not be unduly economically burdensome, would be technically feasible, and would not be inconsistent with goals of universal service.

underlying principles of universal service.

It is clear that the PSC has genuine misgivings regarding Choice. Specifically, the assessment, based on testimony presented to the Commission, that Choice plans to limit its involvement in the Virgin Islands marketplace. The PSC considers any action to allow discretionary participation in the market to be detrimental to the public and not in keeping with universal service principles.

Even more disconcerting to the PSC is the fact that Choice appears to be unwilling to recognize certain authorities vested in the PSC. That fact greatly undermines the PSC's ability to uphold the concept of universal service pursuant to § 254. The Court agrees with the PSC's statement that the questionable compliance of Choice with the universal service policies propounded by the PSC, coupled with the limited intent to engage in the marketplace, is sufficient to determine that Innovative's rural exemption should be upheld.

In this Court's previous Opinion for remand, it asked that the PSC explain why the petition by Choice specifically threatens universal service. The PSC was asked to demonstrate the uniqueness of the threat to universal service by Choice if Choice's petition were to be granted and Innovative's rural exemption was to be lifted. Given the discussion by the PSC in its Commission Filing regarding the specific reasons that Choice's plan would be a threat to universal service, this Court determines that the PSC has met its requirements in providing the answers requested on remand. As such, Innovative's rural exemption must remain in place. The power ultimately lies with the PSC in its capacity as an administrative agency to interpret the statute to make the determination as to whether Choice's interconnection goals are consistent

with universal service such that Innovative's rural exemption should be lifted.[9]  Since the PSC has reviewed the facts and concluded that Choice's proposal is not within the goals of universal service, and has recited its reasoning in the Commission Filing, the Court finds that the PSC's reasoning should be enforced.

## III.   CONCLUSION

For the foregoing reasons, the Court affirms the findings by the PSC in its Commission Filing that Choice's petition for interconnection be denied and that Innovative's rural exemption be upheld.  An appropriate Order will be entered.

**DATED:**   February 28, 2008

HONORABLE STANLEY S. BROTMAN
United States District Judge
(Sitting by Designation)

---

[9]Courts should allow deference to administrative agencies regarding interpretations of the statutes that govern the agency's realm of operation.  *See Chevron U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 844-45 (1984).

8